Next case is United States v. Keston-Lett. Thank you. Good morning, Your Honors. May I proceed? Yes. Good morning, Your Honors. And may it please the court, David Lismay for the United States with my colleague David James. Your Honors, the government is asking the court to reverse the district court's order dismissing the government's indictment with prejudice. This is Judge Winter in New Haven. Could you fill me in? Is Mr. Lett contesting deportation? Your Honor, yes. Portability? I apologize, Your Honor. Yes, Mr. Lett is currently contesting deportation and his removal proceedings. And is seeking asylum. Yes, Your Honor. He is seeking asylum for approximately a year and a half now. He has availed himself of his rights in immigration court and is currently has successfully filed a habeas petition, has moved for parole before the Department of Homeland Security several times, and is contesting his removal as well as seeking asylum, yes. Your Honors. That answers my question. Thank you. Of course, Your Honor. The government is asking this court to reverse the district court's ruling below the district court held incorrectly that upon determining that the defendant was eligible for removal pursuant to the Bail Reform Act, that this Bail Reform Act came into conflict with the Immigration and Nationality Act, and specifically that once the district court permitted bail for the defendant, that that preempted or superseded ICE's ability pursuant to the Immigration and Nationality Act to detain and pursue simultaneous and parallel removal. But you've kept Mr. Lett in detention, haven't you, all this period? Your Honor, the Mr. Lett, after his release in bail before the district court, he was detained. On a detainer that you filed? On a detainer that ICE filed, yes, Your Honor. I mean ICE. And he's still in detention, correct? Yes, Your Honor. He has made several applications for release. He has successfully made a habeas petition for this court. He made that petition, and it was granted kind of simultaneously with the order of removal that the immigration judge and the immigration proceedings. And so he is contesting that order of removal, and so he remains in detention as those proceedings play out. So what are we to make of these conflicting schemes for criminal defendants and aliens? What are we to make of that? They seem to be in conflict. Your Honor, I would turn to the three circuit courts who have addressed this issue, the Sixth Circuit in Bella Zalonzo, the district courts. A lot of district courts in the Eastern District have come out the other way. Your Honor, there have been several decisions in the Eastern District, but they did not have the benefit of the three circuit courts from the Sixth Circuit, the District of Columbia, and the Third Circuit's reasoning. And I think what's for several reasons outlined in those opinions, mainly being that the Bail Reform Act, and particularly what we're dealing with here, 3142d, there is no congressional intent, and certainly no clear congressional intent, as evidenced from those three circuit decisions, for the Bail Reform Act to preempt or supersede the Immigration and Nationalization Act. Your Honor, and they can be read into coexistence. Sotomayor. Well, Your Honor, again, they are separate regimes. As the Sixth Circuit held in Bella Zalonzo, they are separate regimes pursued by separate agencies. And yet we are confronted with both of them, and we have to decide which takes precedence. Correct? Isn't that the case before us? Your Honor, I believe that they can be, again, as the other circuits have held, that they proceed parallel and simultaneously. So Judge Brody felt strongly that to continue to prosecute Mr. Lett criminally when removal was the end result of your detention, thought that it was wasting, she said, this Court's resources, along with the DOJ's resources and Federal Defender's resources, if the intent of government is really to deport Mr. Lett in the first place. How do you respond to that? Your Honor, we believe that that determination is incorrect for several reasons, but the main one being if the focus is on 3142d, which was the focus below of the Bail Reform Act, the same efficiencies that the court, the district court, was worried about plays out regardless of the reading, whether you read it the way the district court read it or you read the statutes the way that the Third, Sixth, and D.C. circuits read it, and that being that the 3142d requires, asks the court, a judicial officer who determines that a defendant may be a flight risk or a danger to the community, to allot 10 days for another sovereign, whether that be State or local. You didn't act in those 10 days, did you? Well, Your Honor, to take the first question and the second question, if I may, if, for example, ICE were to pick up and detain a defendant pursuant to 3142d, 3142d doesn't indicate that the criminal proceedings in Federal court would then end while the defendant was detained and being pursued by ICE for removal proceedings. And in that circumstance, you still have the possibility that the defendant would consent to removal or would be removed prior to the completion of the criminal proceedings. And so that same inefficiency occurs even if the district court's reading of the statute is correct. So the same inefficiencies exist on both ends. So it's Congress's fault? It's Congress's intention that that may be a possibility that arises. And again, that is reflected in the other circuit's decisions, Your Honor. And to take your next question, Your Honor, with the 10 days, here the district court determined that the defendant was not a flight risk. And so as the D.C. Circuit held in Vasquez, once there's a 3142d only applies when a judicial officer determines that a defendant is a flight risk or a danger to the community. Here the district court determined to release the defendant on bond, and so 3142d didn't necessarily take effect. Can you explain how we should interpret that phrase after that provision in 3142d, the notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings? Your friend seems to argue that that suggests that the BRA should take precedence. And I'm wondering what your explanation is for that language. Of course, Your Honor. So I would take that in two pieces. One, I would point to, again, the way the other circuits have held, which is that it is a limitation on the district courts and a direction for how the district court should proceed, that being if the notwithstanding language is, if you, if it's another State or local authority or ICE for purposes does not take custody of a defendant, then the district court is directed to then engage in a bail determination pursuant to the Bail Reform Act, notwithstanding that other detention regimes such as State or local authorities may ultimately wind up in play. And I think the way to highlight that is certainly there are examples where an individual commits a Federal crime, is brought before Federal court, that individual may be on State bail, but it cannot be that a State pursuant to the Bail Reform Act is barred from detaining an individual for violation of parole simply because of the bail, because a bail determination is made in a separate Federal court proceeding, Your Honor. Continue. My time is coming up. Summation? Your Honor, again, I think I would, I would highlight that these are two separate schemes, the INA and the BRA, pursued by separate agencies that can and were intended by Congress to proceed in parallel. And the Bail Reform Act applies solely to criminal proceedings. And an Article III court's ability to oversee its criminal proceedings are not affected by a separate civil detention regime that Congress intended to pursue and potentially to pursue in parallel. And I see my time is coming up, so I'll. Thank you, counsel. Thank you very much. We'll hear from Mr. Latt, counsel. Good morning, Your Honors. May it please the Court, Isaac Wheeler of the Federal Defenders of New York for Keston Latt. I think I'll begin where Mr. Lismy ended. The issue of parallel proceedings is not really the question in this case. We don't object to, we don't maintain that ICE loses the ability to pursue a removal proceeding against someone just because they're under federal indictment. And Trujillo-Alvarez didn't hold that either, the, the District of Oregon case that most of the Eastern District cases that Judge Pooler referred to relied on. Our contention is that when the government chooses to indict someone in federal court, the Federal court's bail determinant, the government submits to the Federal court's bail determination. So it's only the detention in parallel that violates Mr. Latt's rights under the Bail Reform Act, not the removal proceeding itself. The, the... But they view detention as preparatory to removal. That's right. And, and I think significantly they claim that it's mandated for Mr. Latt as an arriving alien, although that is not in fact the case. And Judge Brody had before her, when this was argued in front of her, the government represented her. She said, how is your office handling these cases? And the government said, well, case by case, we talk to ICE and figure out what we're going to do. In other words, the government admitted to her that case by case, it was deciding whether to obey a bail release order or to disobey it. And under those circumstances, I think Judge Brody acted appropriately to vindicate her authority, finding that the purpose of ICE detention was clearly to do an end run around her release order rather than for purposes of the removal proceeding. They might argue that the Bail Release Act does an end run around their right to detain. Well, I think it does in this sense, Your Honor. The only place the Bail Reform Act mentions immigration status is 3142D. And it speaks in categorical terms that, that when release is appropriate under the Bail Reform Act, the judge may order release pending the judicial proceeding, or as it's put in 3142A, pending trial. It doesn't say pending trial unless the executive has a different reason to detain. So the government's complaint at page 28 in its brief that it's being asked to commit entirely to the criminal process was Congress's design. They made an exception. They said if someone is subject to deportation, then you can have temporary detention for 10 days and ICE can come in and take custody of the person. But no. They didn't do it. They didn't do it. And that section is captioned. Why didn't they do it? Well, I think you would know. Do you have any idea? I, I, I mean, I don't know. I do know that the record in this case includes the fact at GA 14, it was in the for Mr. Lett below, that she spoke to CBP and said, why are you detaining him? And CBP said, we usually obey bail orders, but we have a new instruction to detain people in this case. That was after the bail determination. But my point is Congress said, okay, if someone's amenable to immigration detention, the government can vindicate that interest within the 10-day temporary detention period by having ICE take custody of them. What the BRA does not say is that after a release order, ICE may do so. And it doesn't mention immigration status or susceptibility to deportation as a factor the district court is otherwise to consider. So I think, you know, the government argues, well, 3142D only applies when someone's found a flight risk or a danger to the community. But that makes sense because if someone isn't a flight risk and isn't a danger to the community, I think Congress reasonably expected that the executive would obey a district court's release order and would not act irrationally to try and deport and prosecute someone at the exact same time. But if that is, in fact, what the executive wants to do, then 3142D provides a mechanism for doing so. If someone who is an arriving alien who was found with drugs in his suitcase, why isn't he, by definition, a flight risk? Well, I think my best answer to that, Judge, is just the proof is in the pudding as reflected in the record in this case, as reflected in our supplemental appendix, that most couriers in the Eastern District are granted bail. So the view of the district courts, at least, which the government has not appealed to this court, right? To appeal the bail determination in this case and argue that it was done in error. It simply used a different authority to achieve the same result. But I think, you know, district courts routinely grant bail in these cases, and people are under electronic supervision or whatever conditions the district courts deem appropriate. And CBP has routinely, as the record in this case reflects, until Mr. Lett's case, abided by those release orders for arriving aliens. And then typically, after the criminal trial, the defendant is sentenced and they put a detainer in at the conclusion of the sentence? That's correct, Your Honor. And then the removal proceedings can go on from that point. And as we set forth at some length in our brief, we think the INA can be read in multiple ways to sort of contemplate that that's the natural and logical order of things. Judge Brody is not the first judge who said, this is crazy. We're going to try him and incarcerate him and then remove him? Why don't we remove him earlier and not waste all these resources? That's correct. And she specifically relied on Chief Judge Urizeri's opinion in the Ventura case, which has already been appealed to this court, which is now on remand to Chief Judge Urizeri for her to clarify whether she was finding that the government was acting pretextually or in bad faith in using its immigration detention authority. How do you distinguish the Third, Sixth, and D.C. Circuit cases that your friend referred to? On several axes, Your Honor. First of all, in at least the D.C. and Sixth Circuit cases, there was an actual mandate of ICE to detain the person pending removal, whereas here, contrary to the government's claims, the detention was purely elective. Nothing prevented the government from obeying the bail – nothing in the INA prevented the government from obeying the release order. So we don't think this court needs to – I don't understand that. I thought there was a detainer in Mr. Lett. There was a detainer, but the detention authority that it was issued under allows CBP to simply transiently take custody of him and then release him on parole again. That's not the case in every detention situation? No. The illegal reentry cases in the D.C. Circuit and in the Sixth Circuit – the Sixth Circuit defendant was post-conviction pre-sentencing, post-adjudication of guilt pre-sentencing, so it's distinguishable on that basis as well. But in the D.C. Circuit, they were both illegal reentry defendants who were subject to mandatory detention and removal under a different immigration law provision than the one at issue here. And so I don't think this court needs to address a sort of head-on collision between the BRA and the INA in this case, because nothing prevented the government from obeying the bail release order in this case, even under the INA itself. As a matter of statutory interpretation, if we can read the two statutes together, we should do so, right? You would agree with that? I agree with that, and I believe that 3142D, as I was explaining previously, makes clear that the statutes exist in a logical way side by side in that there are sometimes mandates to detain under immigration law. When those apply, the government has a means to effectuate them under the 10-day period. And then otherwise, Congress contemplated that the BRA – that duly issued release orders under the BRA would be obeyed. If I just may return to the circuit case law, the D.C. Circuit also said – in the case that has already reached this court in Ventura, where it was remanded to Chief Judge Urizeri for further explanation of whether the government was acting pretextually, the D.C. Circuit said, we find – and I think the Third Circuit is consistent, as is the detention authority to actually deport somebody, right? But we do not find – they don't find that it would be appropriate to skirt the Bail Reform Act. If the government really wanted to deport Mr. — That goes to your pretext argument, though, right? The motivation of why something is happening, as opposed to the statutory argument where they can be read together in a way to provide overlapping authority. Yes. I think that's correct, Your Honor, except that they were addressing a situation where there was more arguably a mandate to detain than there is here. So, you know, even if the court were to agree with that statutory interpretation point, I don't think this case presents that square conflict. But I do think we argued below that the purpose of his detention was not to effectuate his removal, which could have been done summarily with the stroke of a pen when he arrived at the airport. The purpose of his detention was to obviate the Bail Release Act order pursuant to whatever policy change CBP referred to. So even if the court were to agree with those circuits on the statutory reasoning, I don't think they need to reach that issue in this case. And to the extent they find – I mean, Judge Brody basically said, I adopt the defense's argument for the reasons stated by Chief Judge Arizeri and Judge Brody, that the court finds that detention relevant. But to the extent the court finds it unclear exactly what Judge Brody held, I think a remand similar to the one in Ventura for further clarification would be appropriate. Thank you, counsel. Thank you. Mr. Lismy, you've reserved a few minutes for rebuttal. Thank you, Your Honors. Can you explain for me the change in policy that opposing counsel alluded to? Your Honor, I think it's – even from opposing counsel's brief, I think it's been clear that it is a case-by-case determination by ICE, a separate agency, for whether or not to take an individual, a defendant, into custody following release or not. But did they change their procedure on this case-by-case analysis at some point? And if so, when? And if so, did they have a bad experience with released detainees not showing up for trial? Your Honor, I can't speak for the individualized factors for ICE in terms of detaining. But what I can say is that they – from what we know is that they evaluate each case on its specific merits and then make the determination. But counsel suggested, and if he's wrong, this is the time to tell me, that in the They let – they let him – they let the defendant out under the conditions imposed by the BRA and waited until after conviction or acquittal to take the next step. Your Honor – And you tell me and he tells me that changed at some point. Your Honor, two points if I may. One is I don't believe that that blanket assessment applies across the board for previous or current actions of ICE. And secondly, and I think critically, there has been no finding – there was no finding of pretext here. There was no finding as to the actions of ICE here. This was completely, as Your Honor's have from the record, a legal finding by the district court below. And so there was no – the issue of pretext and the reasons for ICE detention was not raised below by defense counsel. It was not a reason for the district court's determination. And it is not in the record here, these other cases that have been – that were raised in the appellee's brief. So the issue of pretext is certainly not even before the Court here, for one. And secondly, to address the issue of the release and then release from ICE custody to the Marshals' custody, I'd like to highlight that as the Sixth Circuit found in Bella Zalonzo, it's not even clear that release from ICE custody to U.S. Marshals' custody even constitutes release for purposes of the Immigration and Naturalization Act. And, Your Honor, I do want to address your question as to the 3142D 10-day period and just highlight initially that the – again, 3142D only applies – that 10-day period only applies if a judicial officer determines an individual is going to be a flight risk or a danger to the community. And here, the district court determined otherwise, and so that 10-day period wouldn't – Are you afraid of the obligation to act within 10 days? Certainly not, Your Honor. I think it was – the application was made to the district court, and the district court determined to release the defendant. And so it's on the court to direct the government to notify State, local authorities or ICE if it is going to determine – if it's likely to determine that a defendant is a flight risk or a danger to the community. The court didn't determine that the defendant was, released him, and so that 10-day period did not take effect. And lastly, as I see my time ticks away, I do want to – I do want to highlight again this idea of the statutory interpretations here and that there is certainly no clear congressional intent for the Bail Reform Act under anywhere, but specifically under 3142D, to supersede either State or local authorities' ability to detain and to pursue its separate civil statutory scheme that incorporates civil detention for its removal proceedings. Thank you. Thank you both. Thank you, Your Honor. Very interesting case. We'll reserve –